IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


JIMMY E. KING                                                                           PLAINTIFF


v.                                        NO. 3:10CV00022 HDY


MICHAEL J. ASTRUE,                                                                    DEFENDANT
Commissioner of the Social
Security Administration


MEMORANDUM OPINION AND ORDER


BACKGROUND. Plaintiff Jimmy E. King ("King") began his attempt to obtain

benefits by filing applications for disability insurance benefits and supplemental security

income benefits pursuant to the provisions of the Social Security Act ("Act"). His

applications were denied initially and upon reconsideration. He then requested, and

received, a de novo hearing before an Administrative Law Judge ("ALJ"), who eventually

issued a decision adverse to King. The ALJ's decision was subsequently affirmed by the

Appeals Council and became the final decision of the Commissioner of the Social Security

Administration ("Commissioner"). King then commenced the proceeding at bar by filing

a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the

Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. The standard requires the Court to take into consideration "the weight of the evidence in the record and apply a balancing test to evidence which is contrary." See Heino v. Astrue, 578 F.3d 873, 878 (8th Cir. 2009) [internal quotations and citations omitted].

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, the ALJ found that King has not engaged in substantial gainful activity since the alleged onset date.[1] At step two, the ALJ found that King suffers from "major depressive disorder, adjustment disorder with mixed anxiety and depression, and back pain," see Transcript at 16, and has a severe impairment. At step three, the ALJ found that King does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The ALJ then assessed King's residual functional capacity and found that he is capable of

---

[1]

In so finding, the ALJ also noted the following:

"… However, it is noted for the record that [King] works as handyman and does electric, plumbing, and carpenter work and that he has been doing this kind of work since 2003, gets paid by check, has received no tax statement from his employer, [and] his employer does not take out taxes from his check. He said that this year he earned about $10,000. [King] is primarily self-employed. There is some question whether this is substantial gainful activity; however, it is a moot question because I have found him not disabled. Even though I am finding this work activity not to be substantial gainful activity, as already stated above, it does tend to support [King] is capable of work activity despite his symptomatology. It is also noted that the vocational expert felt this work activity was medium skilled work activity, which tends to support [King] is and was capable of lighter work activity on a full time basis."

See Transcript at 16.

performing "at least the light work activity, which involves lifting no more than twenty pounds at a time with frequent lifting or carrying objects weighing up to ten pounds." See Transcript at 16. At step four, the ALJ found that King cannot perform his past relevant work because the demands of the work exceed his residual functional capacity. At step five, the ALJ referenced the Medical-Vocational Guidelines ("Guidelines"); he found that correlating King's residual functional capacity, age, education, and work experience to the Guidelines, there are other jobs in the national economy he can perform. The ALJ thus concluded that King is not disabled within the meaning of the Act.

KING'S ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? King thinks not and advances four reasons why, three of which have no merit.[2] The ALJ's findings with regard to the severity of King's back pain, the credibility of his subjective complaints, and his residual functional capacity are supported by substantial evidence on the record as a whole, largely for the reasons set forth in the Commissioner's brief. See Document 14 at 4-13. The ALJ's findings as to the severity of King's mental impairments and, in turn, the use of the Guidelines at step five, though, was error for the following reason.

---

[2]

    King advances the following four reasons why the ALJ's findings are not supported by substantial evidence on the record as a whole: (1) "[t]he ALJ erred by failing to develop evidence about [King's] back impairment ...;" (2) "[t]he ALJ erred by finding that [King] possesses the residual functional capacity to perform light work while ignoring the RFC requirements of SSR 96-8p;" (3) "[t]he ALJ erred by rejecting [King's] testimony by failing to properly apply the credibility determination factors established by case law and SSR 96-7p;" and (4) "[t]he ALJ erred by basing his disability determination solely upon the grids and failing to obtain vocational expert testimony about the number of jobs available when [King] has significant 'non-exertional' impairments." See Document 13 at 12, 14, 18, and 22.

KING'S SELF-EMPLOYED WORK ACTIVITY. As a preliminary matter, the Court makes a brief mention of King's self-employed work activity. The Commissioner would have the Court affirm the ALJ because King's admitted self-employed work activity qualifies as "engaging in [substantial gainful activity] under the self-employment guidelines." See Document 14 at 5.[3]   The Court is reluctant, however, to affirm on a ground not specifically relied upon by the ALJ in rejecting a claimant's request for benefits, in part

---

[3]
The Commissioner specifically maintains the following in support of his assertion that the ALJ should be affirmed because of King's self-employment work activity:

> Initially, ... the Court could decide this case at the first step of the sequential evaluation process based on [King's] admissions that he has been engaged in self-employment since at least 2001. Although the ALJ said this issue was moot in light of his finding of not disabled, the Court can rule that [King's] self-employment was substantial gainful activity (SGA) based on the uncontroverted evidence in the record, *i.e.*, [his] own admissions. ...

> The applicable regulations for determining whether self-employed individuals had performed work at the SGA level is 20 C.F.R. 404.1575, "Evaluation Guides if you are Self-employed."  This regulation notes that there are three tests that can qualify work as SGA for individuals such as [King] who are self-employed. For self-employed individuals, the SSA does not consider the income alone, as it is the value of the services to the business regardless of whether Plaintiff received an immediate income for his services. ... [King] admitted that he earned $10,000 a year or $840 a month as a self-employed owner of a handyman/maintenance business since at least 2001. ... [He] also reported that he worked 26 hours a week, on average; that he alone decides what jobs to take and how to complete them; that he decides what to charge for his services; and that he would sometimes get someone to help him with jobs. ... Thus, [King's] own admissions show that he is "rendering services that are significant to the operation of the business," or "the work activity is comparable to unimpaired individuals who are in the same or similar business." ... Because [King] operated the business by himself, any services he rendered are deemed significant to the business. ... Alternatively, he worked well over 45 hours a month and would be deemed to have performed significant services, as well as activity comparable to unimpaired individuals in terms of hours, skills, energy output, efficiency, duties and responsibilities. ... The Commissioner respectfully submits that the Court should deny [King's] appeal at Step 1 ...

See Document 14 at 4-5.

because there is no assurance that the record has been properly developed with regard to the ground. Although King's ability to perform work associated with electrical, plumbing, and carpentry work is certainly germane to the credibility of his subjective complaints and his residual functional capacity, the Court will not consider whether to affirm the ALJ simply because King's self-employed work activity may qualify as engaging in substantial gainful activity.

KING'S MENTAL IMPAIRMENTS. At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment. At step five, the ALJ must determine whether the claimant's residual functional capacity, age, education, and work experience are such that there are other jobs in the national economy that he can perform.  King maintains that the ALJ erred at step five, in part, because the ALJ "applied the [Guidelines] to find that [King] is not disabled despite the presence of significant nonexertional impairments …" See Document 13 at 22.

The ALJ may not rely upon the Guidelines if the claimant suffers from non-exertional impairments that "diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities." See Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) [internal quotation omitted]. Instead, the ALJ must obtain vocational expert testimony. If, however, the claimant's non-exertional impairments do not diminish or significantly limit his residual functional capacity to perform the full range of Guideline-listed activities, use of the Guidelines is not error.

At step two, the ALJ found that King suffers from, inter alia, a major depressive disorder and an adjustment disorder with mixed anxiety and depression. The ALJ found that the "frequency, intensity, and duration of [King's] mental symptomatology would no more than minimally affect his ability to carry on gainful activity at the light exertional level," see Transcript at 14, and used the Guidelines at step five in determining that he is not disabled within the meaning of the Act.

Substantial evidence on the record as a whole does not support the ALJ's findings as to the severity of King's mental impairments. The notes from King's visits to the offices of the Mid-South Health Systems indicate that his mental impairments, although to some extent situational in nature, are mild to moderate. See Transcript at 191-198, 200-218, 240-253. They are significant enough for Prozac and Buspar/Buspirone to have been prescribed. A consultant reviewed King's history of treatment, and he too found the following: "Treatment notes recently describe [King's] depression as mild to moderate." See Transcript at 236. The same consultant opined that although King has a mild limitation with regard to his "restriction of activities of daily living," he has moderate limitations with regard to "difficulties in maintaining social functioning" and "difficulties in maintaining concentration, persistence, or pace." See Transcript at 234.

Given the evidence in the record, King's mental impairments more than minimally affect his ability to perform light work. The record establishes that his mental impairments are at a minimum mild and at worst are moderate.

-6-

Given the foregoing, the Court finds that a remand is necessary. The ALJ shall obtain the testimony of a vocational expert in determining whether there are other jobs in the national economy that King can perform.

CONCLUSION. The Commissioner's decision is reversed, and this proceeding is remanded. This remand is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for King.

IT IS SO ORDERED this _____7_____ day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE